UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIANN M. CURTIS, individually and on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | 16 C 4232 |
| Plaintiff, | ) | |
| | ) | Judge Gary Feinerman |
| vs. | ) ) | |
| WHEATON FRANCISCAN SERVICES, INC. d/b/a Wheaton Franciscan Healthcare, WHEATON FRANCISCAN SYSTEM RETIREMENT PLAN COMMITTEE, and JOHN DOEs 1-20, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| | ) | |
| BRUCE BOWEN and CHERYL MUELLER, individually and on behalf of herself and all others similarly situated, and on behalf of the Wheaton Franciscan System Retirement Plan, | ) ) ) ) | 16 C 6782 |
| | ) | |
| Plaintiffs, | ) | Judge Gary Feinerman |
| | ) | |
| vs. | ) ) | |
| WHEATON FRANCISCAN SYSTEM RETIREMENT PLAN, WHEATON FRANCISCAN SERVICES, INC. d/b/a Wheaton Franciscan Healthcare, OPERATIONS COMMITTEE OF THE BOARD OF DIRECTORS OF WHEATON FRANCISCAN SERVICES, INC., JOHN and JANE DOEs 1-20, members of the Operations Committee, ASCENSION HEALTH, ASCENSION HEALTH ALLIANCE d/b/a Ascension, ASCENSION HEALTH PENSION COMMITTEE, JOHN and JANE DOEs 21-40, members of the Ascension Health Pension Committee, and JOHN and JANE DOEs 41-60, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In these putative class actions, Diann Curtis in Case 16 C 4232, and Bruce Bowen and

Cheryl Mueller in Case 16 C 6782, allege that Wheaton Franciscan Services and others violated

1

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, in administering Wheaton's employee pension plan. Defendants have moved to transfer both cases to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). Doc. 12 (16 C 4232); Doc. 18 (16 C 6782). The motions are denied.

## Background

To resolve a motion to transfer, the court draws the facts from the complaint, as supplemented by affidavits and other evidence, and draws all reasonable inferences in Plaintiffs' favor. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011); *Kuvedina, LLC v. Pai*, 2011 WL 5403717, at *1 (N.D. Ill. Nov. 8, 2011). Unless noted otherwise, all record citations are to the docket in Case 16 C 4232.

Wheaton is an Illinois-based nonprofit corporation with offices in Glendale, Wisconsin, and headquarters in the Chicago suburb of Wheaton, Illinois. Doc. 1 at ¶ 11; Doc. 1 (16 C 6782) at ¶ 20. It operates nineteen hospitals and other healthcare facilities in Illinois, Iowa, Wisconsin, and Colorado. Doc. 1 at ¶¶ 25-26. Wheaton offers its 17,000 employees a defined-benefit pension retirement plan ("the Plan"), which Wheaton administered from its establishment in 1983 through February 29, 2016. *Id*. at ¶¶ 42-44; Doc. 1 (16 C 6782) at ¶¶ 20.

In October 2015, Wheaton began transferring its holdings to other healthcare organizations. Doc. 1 (16 C 6782) at ¶¶ 20, 47-51. In March 2016, some of Wheaton's operations in Wisconsin passed to Ascension Health, which took over sponsorship and administration of the Plan. *Id*. at ¶¶ 22, 48. Ascension, which the *Bowen* plaintiffs have named as a defendant, is a Missouri corporation with headquarters in St. Louis, Missouri. *Id*. at ¶ 22.

Effective March 1, 2016, the day that Ascension took over the Plan, Defendants amended the Plan's governing document to add a forum selection clause. Doc. 15-1 at 8; Doc. 47-1 at 2-3.

The forum selection clause provides that any suit concerning the Plan shall be resolved in the state courts in St. Louis County, Missouri or in the Eastern District of Missouri. Doc. 15-1 at 48 § 13.17. A bulletin dated May 12, 2016 informed Plan participants of the clause's addition. Doc. 47-1.

Plaintiffs are Wheaton retirees who are eligible for benefits under the Plan. Doc. 1 at ¶ 9; Doc. 1 (16 C 6782) at ¶¶ 17-18. Wheaton employed Curtis at a medical center in Waterloo, Iowa, for twenty years; she retired in October 2009, receives benefits as a Plan participant, and lives in Denver, Iowa. Doc. 1 at ¶ 9. Wheaton employed Bowen for sixteen years and Mueller for forty-seven years until their retirements in April 2014 and July 2015, respectively; they, too, are current Plan beneficiaries. Doc. 1 (16 C 6782) at ¶¶ 17-18. Both worked for Wheaton in southeastern Wisconsin, where they still reside. Doc. 25 (16 C 6782) at 13 & n.4.

**Discussion**

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …." 28 U.S.C. § 1404(a). The moving party ordinarily bears the burden of demonstrating that a transfer is clearly warranted. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). If a valid forum selection clause governs the dispute, however, "[the] clause [should be] given controlling weight in all but the most exceptional cases," and "the party defying the forum-selection clause … bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted," and the *Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (alteration in original). Accordingly, the court first will determine whether the forum selection clause added to the Plan in March 2016

applies to the two present suits and then, applying the standard that follows from that determination, will evaluate whether a transfer is warranted.

### A.     The Forum Selection Clause Does Not Govern These Suits.

As noted, Defendants amended the Plan on March 1, 2016 to add a forum selection clause. The clause states in relevant part: "Any action by any party relating to or arising under the Plan shall be brought and resolved only in the state courts in St. Louis County, Missouri or the U.S. District Court for the Eastern District of Missouri." Doc. 15-1 at 48 § 13.17; Doc. 47-1 at 3. The parties dispute whether the clause governs Plaintiffs' claims.

According to Plaintiffs, the forum selection clause applies *only* to employees who retire on or after the amendment's March 1, 2016 effective date, meaning that it does not apply to any of them, as they all retired in 2015 or earlier. Doc. 20 at 2; Doc. 25 (16 C 6782) at 3. To support their reading, Plaintiffs point to § 1.02 of the amended Plan, which states: "The provisions of this Plan shall apply only to an Employee who terminates employment with the Employers on or after the effective date of this amendment and restatement." Doc. 15-1 at 9 § 1.02; Doc. 20 at 2; Doc. 25 (16 C 6782) at 3. As its text makes clear, § 1.02 is a non-retroactivity rule providing that the amended Plan applies only to employees who retire on or after March 1, 2016.

Defendants respond by arguing that § 1.02's non-retroactivity rule governs only the Plan's "substantive" provisions—meaning those pertaining to the calculation of benefits—and not to "procedural" provisions like the forum selection clause. Doc. 21 at 1. This reading's principal flaw is that the pertinent text includes no such limitation; it refers to "[t]he provisions of this Plan," period, not to "the substantive provisions of this Plan." Defendants nevertheless urge that the above-quoted sentence of § 1.02 be read in context with the two sentences that follow, both of which address benefits under the Plan. Doc. 45 at 8-9. The three sentences read:

The provisions of this Plan shall apply only to an Employee who terminates employment with the Employers on or after the effective date of this amendment and restatement.  Except as otherwise specifically provided for herein, *a former employee's eligibility for benefits, and the amount of benefits, if any, payable to or on behalf of a former employee* shall be determined in accordance with the provisions of the Plan in effect on the date his or her employment terminated.  *The benefit payable to or on behalf of a Participant* covered under this amendment and restatement of the Plan shall not be affected by the terms of any amendment to the Plan adopted after such Participant's employment terminates, unless the amendment expressly provides otherwise.

Doc. 15-1 at 9 § 1.02 (emphases added).  The second sentence makes clear that the benefits (if any) owed to former employees will be determined according to the version of the Plan that was in effect on the day they retired.  The third sentence adds that the benefits (if any) owed to current employees during their retirement will not be affected by Plan amendments adopted after they retire unless the amendment provides otherwise.

According to Defendants, the fact that the second and third sentences speak only to eligibility for benefits and their amounts—in other words, the fact that those sentences speak only to the Plan's substantive provisions—means that the first sentence likewise pertains only to the Plan's substantive provisions.  But the specificity of the second and third sentences cuts in favor of Plaintiffs' reading of § 1.02, not Defendants'; it shows that the Plan's drafters knew how to limit Plan language to substantive matters when they wished to do so.  *See In re Pajian*, 785 F.3d 1161, 1164 (7th Cir. 2015) ("The use of both terms in Rule 3002 suggests that the drafters knew how to distinguish between *all* claims and *unsecured* claims.  That they did not specifically mention *unsecured* claims when setting forth the 90–day deadline in subsection (c) thus strongly implies that the deadline encompasses *all* claims ….").  Had the Plan's drafters intended the limitation Defendants urge, they could and would have written the limitation into § 1.02's first sentence by qualifying the generic term "provisions" rather than leaving it unadorned.  The most logical reading of § 1.02, then, is that the first sentence sets forth a general non-retroactivity rule

5

applicable to all "provisions of this Plan," both substantive and procedural, while the second and third sentences clarify how that general rule applies specifically to provisions concerning eligibility for and amount of benefits. To conclude otherwise would read into the first sentence of § 1.02 a limitation that its text does not admit.

Defendants next appeal to the venerable principle that "specific provisions in a contract control over general ones." Doc. 21 at 3. In their view, the fact that the forum selection clause applies by its terms to "[a]ny action by *any party*" overrides and carves an exception to § 1.02's general non-retroactivity rule. Doc. 21 at 3 (alteration in original) (quoting Doc. 15-1 at 48 § 13.17). That argument is meritless. The forum selection clause's reference to "any party," without more, is too thin a reed on which to hang the conclusion that the Plan's drafters intended to exempt the forum selection clause from § 1.02. Rather than meaning "any party, including those not otherwise subject to this Plan amendment by virtue of § 1.02," the term "any party" means "any party to whom this amendment applies."

Section 5.01 of the Plan confirms that Plaintiffs' interpretation of § 1.02 and the forum selection clause is correct. Section 5.01 expressly exempts Article V of the Plan from the non-retroactivity rule in § 1.02's first sentence, and it does so in no uncertain terms. It states in relevant part: "*Notwithstanding the provisions of Section 1.02* (which provided that Plan amendments after a Participant terminates employment shall not be applicable to such Participant)[,] effective January 1, 2016 the provisions of this Article V shall be applicable to Participants *regardless of termination date*." Doc. 15-1 at 26 § 5.01 (emphasis added). By stating without qualification that § 1.02 "provide[s] that Plan amendments after a Participant terminates employment shall not be applicable to such Participant," § 5.01 confirms that § 1.02 means what it says: it imposes a non-retroactivity rule for all Plan provisions (unless otherwise

6

specified) and not just its substantive provisions. *Cf. Barnett v. Ameren Corp.*, 436 F.3d 830, 833 (7th Cir. 2006) ("A provision that seems ambiguous might be disambiguated elsewhere in the agreement."). Moreover, the fact that § 5.01 expressly exempts Article V from the scope of § 1.02 shows that the Plan's drafters knew how to carve such an exemption, and the fact that they did not do so in the forum selection clause means that they did not intend to do so. *See Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 460 (7th Cir. 2010) (holding that the Federal Rules of Civil Procedure do not exempt nonprofits from posting injunction bonds, reasoning that Rule 65(c) contains an "express exemption of the federal government from having to post a bond, which suggests—what is anyway obvious—that the framers of the rules know how to make exceptions to them"); *Fix v. Quantum Indus. Partners LDC*, 374 F.3d 549, 552-53 (7th Cir. 2004) ("[W]hen the parties wanted to limit the definition of 'Change in Control,' they certainly knew how to do so. Indeed, the PROP definition for 'Change in Control' includes an exclusion for an initial public offering and for any event that the board of directors deems does not constitute a 'Change of Control.' There is a strong presumption against reading into contracts provisions that easily could have been included but were not.").

For these reasons, the forum selection clause applies only to employees retiring on or after March 1, 2016, and not to individuals, like Plaintiffs, who retired before then.

**B.      Under the Traditional § 1404(a) Standard, Transfer Is Not Warranted.**

Because Plaintiffs are not "parties [who] have agreed to a valid forum-selection clause," the traditional § 1404(a) standard applies to Defendants' motions to transfer. *Atl. Marine*, 134 S. Ct. at 581. Under that standard, transfer "is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, 992

F. Supp. 1014, 1017 (N.D. Ill. 1998); *see also Atl. Marine*, 134 S. Ct. at 581 ("In the typical case

not involving a forum-selection clause, a district court considering a § 1404(a) motion … must

evaluate both the convenience of the parties and various public-interest considerations.");

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir.

2010) ("The statutory language … is broad enough to allow the court to take into account all

factors relevant to convenience and/or the interests of justice.").  The parties do not dispute that

venue is proper both in the Northern District of Illinois and in the Eastern District of Missouri, so

only the convenience factors and interest of justice factors require consideration.  "The weighing

of factors for and against transfer necessarily involves a large degree of subtlety and latitude,

and, therefore, is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219.

The convenience factors include: "(1) the plaintiff's choice of forum; (2) the situs of

material events; (3) the relative ease of access to sources of proof; (4) the convenience of the

witnesses; and (5) the convenience [of] the parties." *Law Bulletin Publ'g*, 992 F. Supp. at 1017.

The first factor, Plaintiffs' choice of forum, is essentially neutral.  Although a plaintiff's choice

of forum generally deserves some deference, *see FDIC v. Citizens Bank & Trust Co. of Park

Ridge*, 592 F.2d 364, 368 (7th Cir. 1979), little if any deference is owed here because no plaintiff

resides in this District; Curtis lives in Iowa, while Bowen and Mueller live in Wisconsin. *See

Johnson v. United Airlines, Inc.*, 2013 WL 323404, at *5 (N.D. Ill. Jan. 25, 2013) ("[T]he

deference owed here is substantially reduced because Plaintiffs do not reside in this

District …."); *C. Int'l, Inc. v. Turner Constr. Co.*, 2005 WL 2171178, at *1 (N.D. Ill. Aug. 30,

2005) ("Where the plaintiff does not reside in the chosen forum, the plaintiff's choice of forum is

still accorded some weight, but not as much as otherwise.") (collecting cases); *Countryman v.

Stein Roe & Farnham*, 681 F. Supp. 479, 482-83 (N.D. Ill. 1987) (Williams, J.) ("The plaintiff's

choice is given less weight when the plaintiff is a non-resident of the chosen forum, when the

plaintiff sues derivatively or as a class representative, and where the cause of action did not

conclusively arise in the chosen forum."); 15 Wright, Miller, & Cooper, *Federal Practice and

Procedure* § 3848 (4th ed. 2016) ("If the plaintiff is not a resident of the forum, the plaintiff's

forum choice may be entitled to relatively little deference.").

The second factor, the situs of material events, favors Plaintiffs. The Northern District of

Illinois is where Wheaton is headquartered and where, until very recently, it administered the

Plan. Plaintiffs allege that Wheaton's administration of the Plan was deficient, meaning that

alleged ERISA breaches occurred in this District. Illinois also is among the handful States where

Wheaton has had operations, Doc. 1 at ¶ 25—meaning that many members of the putative

classes contracted for their retirement benefits in this District in conjunction with their work

here. By contrast, Wheaton has no corporate offices or operations in Missouri. Although

Ascension now administers the Plan out of St. Louis, meaning that some recent Plan

administration may have occurred there, the alleged ERISA violations occurred predominantly in

this District. On balance, this factor weighs against transfer.

The third factor, the ease of access to proof, is neutral. "When documents are easily

transferable, access to proof is a neutral factor." *Johnson*, 2013 WL 323404, at *5; *see also

Sojka v. DirectBuy, Inc.*, 2014 WL 1089072, at *3 (N.D. Ill. Mar. 18 2014) (collecting cases).

That is especially true where, as here, relevant documents likely exist in both the transferor and

transferee districts. Precisely how many documents are located where matters little, as there is

no reason to think that in this day and age documents could not easily be transferred from St.

Louis to Chicago, or vice versa. *See Sojka*, 2014 WL 1089072, at *3 ("There is every reason to

believe that all relevant documents can easily be transported, electronically or otherwise, to

9

Chicago or Hammond ….”); *Johnson*, 2013 WL 323404, at \*5 (“documents are easily

transferrable”); *Nero v. Am. Fam. Mut. Ins. Co.*, 2011 WL 2938138, at \*3 (N.D. Ill. July 19,

2011) (same); *Handler v. Kenneth Allen & Assocs., P.C.*, 2011 WL 1118499, at \*3 (N.D. Ill.

Mar. 24, 2011) (“[A]ny relevant records can easily be photocopied and exchanged in either

Indiana or Illinois.”); *Digan v. Euro-Am. Brands, LLC*, 2010 WL 3385476, at \*5 (N.D. Ill. Aug.

19, 2010) (“[D]ocuments now are easily scanned, stored, and electronically transmitted … [and]

moving them no longer creates the onerous burden it may once have imposed.”). Indeed, in the

unlikely event that Wheaton has transferred *all* relevant documents to Missouri, the fact that it

was able to do so within a few months of Ascension’s taking the reins would simply underscore

how little weight this factor merits in the era of digital communication and overnight delivery.

The fourth factor, the location and convenience of witnesses, is essentially neutral as

well. In many cases, convenience of witnesses is “the most important factor,” *Nathan v. Morgan*

*Stanley Renewable Development Fund, LLC*, 2012 WL 1886440, at \*20 (N.D. Ill. May 22,

2012), but it has little relevance here. This factor prioritizes the convenience of non-party

witnesses, “as the § 1404 calculus is generally less concerned about the burden that appearing at

trial might impose on witnesses who are either employees of parties or paid experts because it is

presumed that such witnesses will appear voluntarily.” *Sojka*, 2014 WL 1089072, at \*3 (internal

quotation marks omitted); *see also Prokop v. StoneMor Partners LP*, 2009 WL 3764103, at \*5

(N.D. Ill. Nov. 9, 2009) (“[T]he convenience of StoneMor’s employees is entitled only to a little

weight because they are presumed to be under StoneMor’s control.”). Here, the parties’ filings

do not identify any non-party witnesses, much less discuss which forum would be more

convenient for them; rather, both sides focus exclusively on the convenience to the parties. Doc.

14 at 5; Doc. 20 at 13-14.

The fifth factor, the convenience of the parties, slightly favors Plaintiffs. This factor

requires the court to consider the parties' "residences and their ability to bear the expenses of

litigating in a particular forum." *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 42 F. Supp.

2d 821, 834 (N.D. Ill. 1999). "Transfer is inappropriate if it merely transforms an inconvenience

for one party into an inconvenience for the other party." *Ibid.* (internal quotation marks omitted).

Here, although no plaintiff resides in either the transferor or transferee district, the Northern

District of Illinois is closer to Plaintiffs' residences, and thus more convenient, than the Eastern

District of Missouri. Bowen lives in Franklin, Wisconsin, which is roughly 360 miles from St.

Louis and 80 miles from Chicago; Mueller lives in Hartford, Wisconsin, which is roughly 390

miles from St. Louis and 130 miles from Chicago. Doc. 25 (16 C 6782) at 13-14 & n.5. Curtis

lives in Denver, Iowa, which is roughly 280 miles from Chicago and 350 miles from St. Louis.

(The court takes judicial notice of those distances, *see Lowrance v. Pflueger*, 878 F.2d 1014,

1018 (7th Cir. 1989), by consulting driving directions from Google Maps, *see*

https://www.google.com/maps. Both sides have urged the court to rely on Google Maps, Doc. 14

at 3 n.1; Doc. 25 (16 C 6782) at 14 n.5, which the Seventh Circuit allows, *see Cloe v. City of*

*Indianapolis*, 712 F.3d 1171, 1177 n.3 (7th Cir. 2013), *overruled on other grounds by Ortiz v.*

*Werner Enters., Inc.*, __ F.3d __, 2016 WL 4411434, at *4 (7th Cir. Aug. 19, 2016).)

As noted, while Ascension is headquartered in the Eastern District of Missouri, Wheaton

is headquartered in this District. This means that employees with knowledge of relevant events

may be found in both locations and that some amount of travel will be required of Defendants'

employees no matter where this suit is litigated. Moreover, St. Louis and Chicago are major

cities in neighboring States, and both are transportation centers, so traveling between the two

should not impose a significant hardship on Defendants' employees. *See SEC v. Ogle*, 2000 WL

45260, at \*3 (N.D. Ill. Jan. 11, 2000) ("It is far easier for out-of-district defendants to litigate here in a major city with corresponding transportation hubs than to travel to Arkansas.").

The court next evaluates the interest of justice factors. "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation*, 626 F.3d at 978. The relevant factors include "docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Ibid*. (citations omitted). These factors are largely a wash.

The first factor, the expected speed of case resolution, is essentially neutral. *See* United States District Courts—National Judicial Caseload Profile at 47, 59, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/31-1 (then click "Download Data Table") (last viewed Oct. 19, 2016) (showing that, as of June 30, 2016, the median civil case took 13.5 months to disposition and 36.2 months to trial in the Eastern District of Missouri and 7.3 months to disposition and 38.4 months to trial in the Northern District of Illinois). The second factor, familiarity with relevant law, is also a wash, with both courts equally capable of resolving these ERISA disputes. *See Cent. States, Se. & Sw. Areas Pension Fund v. Ehlers Dist., Inc.*, 2012 WL 581246, at \*4 (N.D. Ill. Feb. 22, 2012); *Powell v. Sparrow Hosp.*, 2010 WL 582667, at \*5 (N.D. Ill. Feb. 12, 2010) ("The Court's familiarity with the applicable federal law is a neutral factor that weighs neither for nor against a transfer ….").

The third and fourth interest of justice factors—the desirability of resolving controversies in each locale, and the relation of each community to the controversy—slightly favor Plaintiffs.

12

Until very recently, the Plan was administered out of Illinois by an Illinois-based non-profit corporation for the benefit of its employees, many of whom are Illinois residents. That said, the fund is now administered in the Eastern District of Missouri, and by including claims against Ascension, the *Bowen* plaintiffs introduced Missouri-based defendants into the case, so that community also has a meaningful stake in the outcome of this litigation. But, unlike Illinois, Missouri is not among the four States where Wheaton has employees or retirees who will be affected. So while relevant Plan administration took place in both districts, affected employees will only be found in this one. These factors therefore favor Plaintiffs.

In sum, both the convenience factors and the interest of justice factors are mostly neutral and, if anything, slightly favor this District. Defendants thus have failed to carry their burden of demonstrating that the relevant factors strongly favor transfer. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *Coffey*, 796 F.2d at 219-20 ("The movant … has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient."); *Sojka*, 2014 WL 1089072, at \*5 ("[T]ransfer can be ordered only if the balance of factors strongly favor the defendant's proposed forum.") (internal quotation marks omitted).

One wrinkle remains. Although the forum selection clause does not apply to Plaintiffs and thus does not affect this court's analysis of whether to transfer *their* claims, the clause might apply to putative class members who are current employees or who retired on or after March 1, 2016. Defendants argue that this state of affairs precludes the court from denying transfer because doing so either would deprive Defendants of their right to a Missouri forum for claims involving Plan participants subject to the forum selection clause, Doc. 21 at 8, or would lead to

"piecemeal litigation" in two different districts, Doc. 45 at 9. These arguments are premature on the present motions to transfer given that they precede class certification. Only three plaintiffs are before the court right now, and none are bound by a forum selection clause. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) ("[A] nonnamed class member is [not] a party to the class-action litigation *before the class is certified*.") (alterations in original); *Williams v. GE Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998) ("Generally speaking, absent class members are not 'parties' before the court in the sense of being able to direct the litigation.").

It is true that when some *parties* are bound by a forum selection clause and other *parties* are not, the clause may influence a court's decision whether to transfer the claims of the non-signatory parties. *See In re Rolls Royce Corp*, 775 F.3d 671, 679-81 (5th Cir. 2014); *Mortgage Resolution Servicing LLC v. JPMorgan Chase Bank, N.A.*, 2015 WL 9413881, at *2 (S.D.N.Y. Dec. 22, 2015); *Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 775 n.4 (N.D. Cal. 2015); *Howmedica Osteonics Corp. v. Sarkisian*, 2015 WL 1780941, at *4 (D.N.J. Apr. 20, 2015). But, as just noted, that is not the situation here. Because Plaintiffs have not yet moved for (let alone obtained) class certification, the court does not know which (if any) of their fellow Plan participants they may come to represent. *See AL & PO Corp. v. Am. Healthcare Capital, Inc.*, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015) ("[Alt]hough Plaintiff has proposed nationwide classes, the class certification motion has not been briefed, and the court does not assume such a broad class will in fact ultimately be certified."). Given the putative class members' nonparty status at this stage, they will not be considered on the present motions to transfer. *See Henrichs v. Nova Biomedical Corp.*, 2014 WL 2611825, at *2 (S.D. Tex. June 11, 2014) ("[T]he law is clear that in determining whether venue for a putative class action is proper, courts are to look

only at the allegations pertaining to the named representatives.") (internal quotation marks omitted) (collecting cases); *Joseph v. Liberty Nat'l Life Ins. Co.*, 2008 WL 2026006, at *1 (S.D. Fla. May 9, 2008) ("[I]n considering venue, the inquiry must be focused only on the named Plaintiffs and not the potential class members."); *George v. Kraft Foods Glob., Inc.*, 2007 WL 853998, at *6 (S.D. Ill. Mar. 16, 2007) (explaining that the putative class members' residence "is not a factor the Court normally considers in evaluating the propriety of transfer … absent some evidence that a large number of unnamed members of the proposed class will be called as witnesses at trial or otherwise desire to participate in these proceedings"); William B. Rubenstein, *Newberg on Class Actions* § 6:36 (5th ed. 2016) ("In focusing only on the representative parties, courts generally recognize that 'venue is intimately connected to and predicated upon the personal appearance of the party' and that therefore, in class actions, the relevant venue question is whether venue is proper as among parties who have in fact been brought personally before the court as named parties to the action.") (internal quotation marks omitted).

## Conclusion

For the foregoing reasons, Defendants' motions to transfer are denied. This disposition renders it unnecessary at this time to resolve the parties' dispute over whether forum selection clauses are permissible under ERISA or, for that matter, whether the Plan is governed by ERISA.

October 31, 2016

_____

United States District Judge